UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 05-10105-RWZ

UNITED STATES OF AMERICA

v.

FRANKLIN AZUBIKE

MEMORANDUM OF DECISION

March 3, 2006

ZOBEL, D.J.

Trooper Hanlon responded to a call for assistance on the state police radio to stop defendant Franklin Azubike on March 15, 2005.  Because he had not previously participated in any matters relating to defendant, Trooper Hanlon obtained a physical description from the radio call and learned that defendant had been under surveillance and was believed to be transporting a briefcase containing narcotics.  Upon stopping defendant, Trooper Hanlon requested his license and registration.  Defendant drove a rental car and, thus, provided a rental agreement alongside his New York State license. Trooper Hanlon then instructed defendant to step outside of his car, conducted a pat down of defendant and asked where he was driving from and to.  Defendant answered that he had stayed at the Colonnade Hotel in Boston the previous night to visit his cousin and now was returning home.  Two backup officers arrived on the scene, and Trooper Hanlon asked to look inside the trunk of defendant's car.  Standing at the rear of the car and being watched by the three officers, defendant agreed.  Upon searching

the trunk, Trooper Hanlon found a black briefcase among other bags that he left unopened and unsearched.  He opened the briefcase and found a hidden compartment mentioned to him by the law enforcement officials on the police radio call.  Before Trooper Hanlon found the compartment, he placed defendant under arrest.  The two had not engaged in any conversation during the search of the trunk or the briefcase, and none of the officers ever drew their weapons at any time.  In addition to the briefcase, the search also yielded a rental agreement for a storage locker in New York.  The agreement indicated that defendant had rented a locker and granted joint access to the locker to Ms. Jessica Ezeobi.  Law enforcement contacted Ms. Ezeobi and obtained her written consent to open the locker.

Defendant now seeks to suppress the contents of the storage locker and the rental car trunk as well as his statements made to Trooper Hanlon regarding his visit to Boston.  The government opposes, and the court held an evidentiary hearing.

In support of his motion to suppress the storage locker items, defendant argues that Ms. Ezeobi lacked both apparent and actual authority to consent to its search.  "An officer's reliance on a person's apparent authority must be judged against an objective standard: whether a person of reasonable caution with the facts available to him or her would believe the consenting party had authority over the premises."  U.S. v. Marshall, 348 F.3d 281, 285 (1st Cir. 2003).  In Marshall, the First Circuit upheld the denial of a motion to suppress incriminating video tapes found in defendant's bedroom even though his consenting girlfriend who shared the room had no ownership interest in the tapes and was unaware of their existence.  See id. at 288-89.

> Although [the consenting roommate] does not claim ownership over the tapes, she had apparent authority to consent to their search since she had regular access to them. The tapes were not kept in a separate area where [the consenting roommate] lacked access or control over them. As a consequence, [the defendant] has a lessened expectation of privacy in their contents . . . [The consenting roommate]'s access to the videotapes suggests that [the defendant] . . . assumed the risk that [the consenting roommate] might view the tapes herself or allow others to do so.

Id.

Defendant acknowledged during the hearing that Ms. Ezeobi had provided written consent to the search, but he argues that she held a key only to provide a replacement if he lost his own key. He maintains that the law enforcement officers should have inquired directly of Ms. Ezeobi whether she had authority to consent to the search. In light of the lease agreement's permissive language and the fact that Ms. Ezeobi held a key to the locker and willingly provided verbal and written consent to open it, however, it was not unreasonable for the officers to believe that she enjoyed unfettered access to the locker and its contents. Although Ms. Ezeobi's unfamiliarity with the location of the storage facility and the locker contents suggested a lack of ownership interest in the stored items, it does not undermine her apparent right to access them. That she had lost the key, an unfortunately common occurrence for many people, does not diminish her authority to use it or share it with someone else. The officers therefore properly understood her to have apparent authority in spite of the fact that, unbeknownst to them, defendant had verbally restricted her entry. Defendant's motion to suppress the locker contents is, therefore, denied.

Defendant's motion to suppress the contents of the rental car trunk and his statements to the police during the stop and search also fails. He argues that Trooper Hanlon essentially placed him under arrest upon stopping him, and because Trooper Hanlon did not provide a Miranda warning before the statements and trunk contents were obtained, these are not admissible evidence.

To challenge the absence of a Miranda warning, defendant must show that Trooper Hanlon engaged in custodial interrogation and thus needed to provide prefatory Miranda warnings. U.S. v. Lopez, 380 F.3d 538, 545 (1st Cir. 2004). Interrogation includes not only "actual questioning by the police" but also

> the 'functional equivalent' of interrogation, meaning 'any words or actions on the part of the police (other than those normally in attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.

Id., quoting Rhode Island v. Innis, 446 U.S. 291, 301 (1980). Whether police words or actions constituted interrogation is evaluated from defendant's perspective. Id. at 546. In the instant case, defendant's argument relies primarily on Trooper Hanlon's perspective and his intent in executing the stop, namely, that Trooper Hanlon knew, assuming he had stopped the correct person, that he would eventually be arresting defendant. (See Mot. to Supp. No. 2 ¶¶ 3-5). From his own perspective, defendant contends simply that he did not believe he was free to leave. (See id. at ¶ 2). However, most people do not feel free to leave when they are stopped by the police, and that perception alone does not amount to being in custody. Moreover, at the hearing, Trooper Hanlon credibly testified that he tried to be as polite and unfirm as

4

possible in asking defendant to exit his car, and while he and the other officers kept an eye on defendant to minimize the possibility of flight, they never cuffed or interrogated him during the search.  Based on the evidence, defendant has not adequately supported a finding that Trooper Hanlon engaged in custodial interrogation.

Accordingly, defendant's motions to suppress (#23, #24 and #28 on the docket) are denied.

_____  _____
            DATE                                   RYA W. ZOBEL
                                                   UNITED STATES DISTRICT JUDGE